■ WILMINGTON TRUST COMPANY, Appellant, v AAMES FINANCIAL CORPORATION, Respondent. [764 NYS2d 3] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered November 7, 2002, dismissing the complaint pursuant to an order, entered the same date, which granted that relief and also declared in defendant's favor that its proposed exchange offer of certain subordinated debentures does not violate the indenture governing its senior notes due in 2003 or give rise to an event of default thereunder, unanimously modified, on the law, to vacate the dismissal of the action and to insert in the judgment the declaration contained in the order, and otherwise affirmed, without costs.

The IAS court correctly held that although 30% of the principal amount of each of the new debentures to be issued pursuant to the proposed exchange offer was to be redeemed almost immediately, on December 15, 2002, through a mandatory sinking fund payment, such redemption does not violate the requirement of the senior note indenture that any refinancing indebtedness have a final maturity that is no earlier than the final maturity of the indebtedness being refinanced. This is because under the indenture, final maturity is defined as the date on which final payment of principal is due and payable, and under the exchange offer, final payment of principal, i.e., the remaining 70% need not be made until 2012.

We reject plaintiff's argument that because the indenture's definition of final maturity does not say that a single final maturity applies to an entire series of securities, the final maturity date of the 30% of the new debentures that were to be redeemed through the sinking fund is December 15, 2002. As the IAS court stated, since debenture holders may not trade the portion of their debenture that is to be redeemed on

December 15, 2002 separately from the rest of the debenture, it follows that under the exchange offer there is only one set of securities with a maturity date of June 15, 2012, of which a prorated 30% is scheduled to be redeemed on December 15, 2002. Nor is the scheduled sinking fund payment actually a "partial redemption" with a distinct final maturity date. As the IAS court also pointed out, the indenture's definition of restricted payment shows that the parties contemplated that a scheduled sinking fund payment date would not constitute a distinct final maturity date. Although defendant is prohibited from making an optional redemption of its subordinated obligations before repaying its senior notes, it is not prohibited from making a mandatory scheduled sinking fund payment to subordinated debenture holders.

The IAS court also correctly rejected plaintiff's contention that the proposed exchange offer is rendered a "sham" by the "nickel option" it gives defendant to redeem the remaining new debentures at 5% of their principal amount. Although plaintiff may well be right that defendant will choose to exercise the nickel option as soon as possible, it remains that under the exchange offer defendant can, if it chooses, wait until the 2012 final maturity date to redeem the remaining new debentures. Moreover, any optional redemption prior to 2012, either at 33.5% of principal amount if prior to the mandatory sinking fund payment or at 5% if subsequent thereto, can occur only after repayment in full, at maturity or otherwise, of defendant's 9.125% senior notes due in 2003, or amendment of the indenture to provide otherwise. Concur—Tom, J.P., Mazzarelli, Ellerin, Lerner and Marlow, JJ.